UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| SONJA B., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:20-cv-00284-RLY-MPB |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

Plaintiff Sonja B. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d), 1383(c)(3). On October 8, 2021, United States District Judge Richard L. Young entered an Order referring this matter to the Undersigned for a report and recommendation regarding the appropriate disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket No. 17). For the reasons set forth below, it is recommended that the Commissioner's decision denying the Plaintiff benefits be **REVERSED** and **REMANDED** for further proceedings.

**I.   PROCEDURAL BACKGROUND**

In January 2019, Sonja B. filed her application for DIB benefits. (Docket No. 13-2 at ECF p. 16). Sonja B. alleged diabetes, mitral valve prolapse, and a mild stroke. (Docket No. 13-6 at ECF p. 5). The Social Security Administration ("SSA") denied her claim initially on July 18, 2019 (Docket No. 13-4 at ECF p. 2) and on reconsideration on October 2, 2019 (Docket No. 13-4 at ECF p. 9). On October 7, 2019, Sonja B. filed a request for a hearing, which was granted. (Docket No. 13-4 at ECF p. 18).

On May 19, 2020, Administrative Law Judge ("ALJ") Michael Scurry conducted a hearing, where Sonja B. appeared with counsel. (Docket No. 13-2 at ECF pp. 29-51). Vocational Expert Julie Bose, MS, CRC was also present. (*Id.*). Due to the extraordinary circumstances presented by the COVID-19 pandemic, the hearing was conducted over the telephone. (*Id.*). On June 3, 2020, ALJ Scurry issued an unfavorable decision finding Sonja B. was not disabled. (Docket No. 13-2 at ECF pp. 13-24). Sonja B. appealed the ALJ's decision, and on October 21, 2020, the Appeals Council denied Sonja B.'s request for review, making the ALJ's decision final. (Docket No. 13-2 at ECF pp. 2-6). On December 21, 2020, Sonja B. timely filed a Complaint with this Court, which seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. §§ 405(g). (Docket No. 1).

## II.     STANDARD FOR PROVING DISABILITY

Under the Social Security Act, a claimant may be entitled to benefits only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i). At

step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. § Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments in the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1620(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy. *Id.*

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

3

### III. STANDARD OF REVIEW OF THE ALJ'S DECISION

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he has made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

### IV. BACKGROUND

#### A. Factual Background

Sonja B. has an Associate's Degree in Registered Nursing (Docket No. 13-2 at ECF p. 36). She had past work as an RN, which the vocational expert identified as medium work as generally performed and very heavy as Sonja B. actually performed it (*id.* at ECF pp. 48-49). Sonja B. also worked as an MDS Coordinator (*id.* at ECF p. 49). The VE identified that occupation as Dictionary of Occupational Titles number 079.261-010, and said that it is a sedentary job as actually performed. (*id.*).

### B. ALJ Decision

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a) and ultimately concluded that Sonja B. was not disabled. (Docket No. 13-2 at ECF p. 23). At Step One, the ALJ found that Sonja B. met the insured status requirements of the Act through December 31, 2023, and had not engaged in substantial gainful activity since July 30, 2018, the alleged onset date. (Docket No. 13-2 at ECF p. 18).

At Step Two, the ALJ found that Sonja B. suffered from the following severe impairments: diabetes mellitus and hypothyroidism. (Docket No. 13-2 at ECF p. 17). At Step Three, the ALJ found that Sonja B.'s impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (*Id.* at ECF p. 20). After Step Three but before Step Four, the ALJ found that Sonja B. had the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). (Docket No. 13-2 at ECF p. 20). In assessing the medical opinions, the ALJ found the state agency physicians, who opined no severe impairments, to be "not persuasive;" the treating nurse practitioner, who opined that Sonja B.'s ability to work was limited by arthritis in her hands and she could perform occasional reaching, handling and fingering, as well as occasional operation of foot controls bilaterally, to be "not persuasive," and the physical consultative examiner, who opined no physical limitations based on normal examination findings, to be "not persuasive." (Docket No. 13-2 at ECF p. 23).

At Step Four, the ALJ concluded that Sonja B. was capable to perform her past relevant work as a MS coordinator as it was generally performed. (*Id.* at ECF p. 24). Having found that Sonja B. was not disabled at Step Four, the ALJ did not make an alternative Step Five determination. (*Id.*).

## V.  DISCUSSION

Sonja B. makes two arguments. First, she argues that the ALJ erred between steps three and four by trying to fill an evidentiary gap about her physical abilities and limitations with his own lay opinion after rejecting all of the medical opinions regarding her physical abilities. Second, she argues that the ALJ erred by denying her claim on the basis that she can do a composite job that is beyond the abilities found by the ALJ. Because Sonja B.'s second argument is well taken, the Court addresses it first and provides only brief discussion regarding the evidentiary gap argument.

### 1.  The ALJ's Findings at Step Four

Sonja B. argues that the ALJ erred in denying her claim at step four because the ALJ used a composite job to deny her claim, and according to the ALJ's RFC, she could not perform all of its duties. The Commissioner argues that the past relevant work in question was not a composite job and that neither Sonja B. nor her attorney objected to the vocational expert's description of her work history.

Born in 1959 (Docket No. 13-2 at ECF p. 35), Sonja B. has an Associate's Degree in Registered Nursing (*id.* at ECF p. 36). She has past work as an RN, which the vocational expert identified as medium work as generally performed and very heavy as Sonja B. actually performed it (*id.* at ECF pp. 48-49). Sonja B. also worked as an MDS Coordinator (*id.* at ECF p. 49). The specific job at issue is Sonja B's work at Continuing Care from 2002 to 2011 (Docket No. 13-2 at ECF pp. 24, 39). As part of the initial application process, Sonja B. completed a "Disability Report—Adult" form on April 17, 2019 (Docket No. 13-6 at ECF pp. 4-11) and a "Work History Report" on April 30, 2019 (Docket No. 13-6 at ECF pp. 23-28). In the Job

History section of the Disability Report, Sonja B. provided a brief description of her jobs in the previous 15 years:

| Job Title | Type of Business | Dates Worked From mm/yy | Dates Worked To mm/yy | Hours Per Day | Days Per Week | Rate Of Pay Amount | Rate Of Pay Frequency |
|---|---|---|---|---|---|---|---|
| Registered Nurse Floor Nurse | Long term care nursing | JUNE 2017 | JULY 2018 | 8 | 4 | $26.50 | Bi-Weekly |
| Registered Nurse Floor Nurse | Long Term Care Nursing | AUGUST 2016 | MAY 2017 | 8 | 4 | $26.50 | Bi-Weekly |
| Registered Nurse MDS | Long Term Care Nursing | FEBRUARY 2012 | JULY 2016 | 8 | 4 | $26.00 | Bi-Weekly |
| Registered Nurse MDS | Long Term Care Nursing | MARCH 2002 | SEPTEMBER 2011 | 8 | 5 | $34.00 | Bi-Weekly |

(Docket No. 13-6 at ECF p. 6). It is not possible to tell, from the form alone, whether Sonja B's work from 2002 to 2011 was one job followed by a totally separate job, or whether she worked as a registered nurse and an MDS coordinator at the same time.

Similarly, on the first page of the Work History Report, Sonja B. again listed the jobs she worked in the previous 15 years:

| | Job Title | Type of Business | Dates Worked From | Dates Worked To |
|---|---|---|---|---|
| 1. | RN, MDS Coordinator | Bedford Garden Villa Nursing Facility | 3-2002 | 9-2011 |
| 2. | RN, MDS Coordinator | Loogootee Nursing Center Nursing Facility | 2-2012 | 7-2016 |
| 3. | RN, Floor Nurse | Cathedral Healthcare Nursing Facility | 8-2016 | 5-2017 |
| 4. | RN, Floor Nurse | Northwood Good Samaritan Nursing Facility | 5-2017 | 7-2018 |
| 5. | | | | |

(Docket No. 13-6 at ECF p. 23). Again, it is not possible to tell from that form whether the job from 2002 to 2011 was or was not a composite job. On the next page, Sonja B. listed that job as "RN, MDS Coordinator," then described only the MDS Coordinator duties when answering the questions:

> Give us more information about Job No. 1 listed on Page 1. Estimate hours and pay, if you need to. PAGE: 3 OF 7
>
> JOB TITLE NO. 1: RN, MDS Coordinator
>
> Rate of Pay: $34.00 ☑ Hour ☐ Day ☐ Week ☐ Month ☐ Year
>
> Hours per day: 8   Days per week: 5
>
> Describe this job. What did you do all day? *(If you need more space, write in the "Remarks" section.)*
> * Assess patients, interview patients + gather clinical information
> * Schedule + input MDS information into computer
> * Transmit MDS reports to state weekly
> * Retrieve CMI report. Analyze + make necessary changes for accuracy
> * Supervise schedule + direct restorative programs, care plan + staff
> * Write patient care plans + update as needed. (See "Remarks")
>
> In this job, did you:
> - Use machines, tools, or equipment? ☑ YES ☐ NO
> - Use technical knowledge or skills? ☑ YES ☐ NO
> - Do any writing, complete reports, or perform duties like this? ☑ YES ☐ NO
>
> In this job, how many total hours each day did you:
> - Walk? 1
> - Stand? 1
> - Sit? 6
> - Climb? 0
> - Stoop? 0
> - Kneel? 0
> - Crouch? 0
> - Crawl? 0
> - Handle, grab, or grasp big objects? 0
> - Reach? 1
> - Write, type, or handle small objects? 6
>
> Lifting and Carrying: Patient charts from units to my office daily
>
> Check the heaviest weight lifted: ☑ 20 lbs
>
> Check weight you frequently lifted: ☑ 10 lbs
>
> Did you supervise other people in this job? ☑ YES
> How many people did you supervise? 19
> What part of your time was spent supervising people? 100%
> Did you hire and fire employees? ☑ YES
> Were you a lead worker? ☑ YES

(*id.* at ECF p. 24). However, at the hearing, the ALJ asked Sonja B. about the job:

> Q   Okay. And finally for your work history, it looks like that you have some earnings at a place called Continuing Care.
>
> A   Yes.
>
> Q   And can you describe that work for us?
>
> A   Floor nurse for a while and then MDS coordinator.
>
> Q   And when you say MDS coordinator, can you describe for us what that means?
>
> A   Yes. That's an M, as in moth, D-S. It's a Minimum Data Set. It's taking care of care plans and assessing the patients and putting all of it into a report called a Minimum Data Set. [INAUDIBLE] as

8

> well as I still worked on the floor as a floor nurse [INAUDIBLE] the patients [INAUDIBLE].
>
> Q   Well, would you say—it sounds like you had different positions there at Continuing Care. Can you given us an idea of how that, how those responsibilities were set for you? Were you doing the MDS Coordinator on a fulltime basis or was that just something you did?
>
> A   Yeah. I was fulltime MDS Coordinator there when I worked.
>
> Q   Okay, so how long did you work as the MDS Coordinator.
>
> A   Ten years.
>
> Q   Okay and that was the job you were doing when you left there?
>
> A   Yes.
>
> Q   Okay, so as an MDS Coordinator what do you think was the heaviest thing you had to lift and carry there?
>
> A   150- to 200-pound patients because I still assisted in toileting them and transferring them, getting them to therapy as well as assessing them.

(Docket No. 13-2 at ECF pp. 39-40). When asked to describe the claimant's past work over the last 15 years, the vocational expert testified:

> [T]he past work is that of an RN, DOT number 075.364-010, medium per the DOT, with an SVP of 7, making it skilled in nature, and very heavy as performed. She also worked as an MDS Coordinator, DOT number 079.262-010, sedentary per the DOT, with an SVP of 7, and very heavy as claimant indicated that she performed it.

(Docket No. 13-2 at ECF pp. 48-49). Again, the ALJ assigned Sonja B. an RFC of full range of sedentary work and then, at Step four, found that she was able to perform past relevant work as an MDS coordinator, as it was generally performed in the national economy. (Docket No. 13-2 at ECF p. 24).

9

Past relevant work is work the claimant performed within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). A claimant is not disabled if she is capable of returning to past relevant work either as she actually performed it or as it is generally performed in the national economy. 20 C.F.R. § 404.1560(b)(2). In determining whether a claimant can perform his or her past relevant work, the ALJ may be able to rely on a generic job description in the DOT. There are instances, however, in which the claimant's job has no precise counterpart in the DOT. *Michalski v. Berryhill*, 2017 WL 4081905, at *5 (E.D. Wis. Sept. 14, 2017). Social Security Ruling 82-61 advises that "composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case." SSR 82-61 (S.S.A. 1982). *See Wiggins v. Colvin*, 2015 WL 2398478, at *5 (N.D. Ill. May 18, 2015) ("Because by definition a composite job will have no DOT counterpart, the ALJ may rely on evidence provided by a vocational expert to explain the nature of the claimant's past relevant work.").

There are no opinions regarding composite jobs from the Seventh Circuit Court of Appeals. *See generally*, *Combs v. Berryhill*, No. 1:16-cv-02386-JMS-TAB, 2017 WL 2728619 (S.D. Ind. June 26, 2017) (citing *Barnett v. Colvin*, 2014 WL 7450077, at *7 (S.D. Ill. Dec. 30, 2014)) (noting the lack of Seventh Circuit cases regarding composite jobs). Cases considered by district courts in this circuit consist of two categories—cases where a claimant's job was clearly a composite job, and cases where the record is less clear.[1] Where a claimant's past work was

---

[1] This is in line with the well established principle that, although claimants bear the burden of proof through step four, ALJs must address apparent conflicts between a vocational expert's testimony and the Dictionary of Occupational Titles. 20 C.F.R. § 404.1512(a); SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).

clearly a composite job, an ALJ "may not find a claimant capable of performing [her] past relevant work on the basis that [she] can meet some of the demands of [her] previous position, but not all of them." *Peterson v. Astrue*, 2010 WL 3219293, at *6 (N.D. Ind. Aug. 12, 2020) (citations omitted) (reversing and remanding the Commissioner's decision where the ALJ failed to examine whether a claimant could perform the more demanding component of her past work).

Where the record does not clearly demonstrate that a claimant's past job was a composite job, courts in this circuit have examined several factors in reviewing an ALJ's determination, including: (1) whether a claimant was represented by counsel during the hearing before the ALJ, *Oskey v. Colvin*, 2015 WL 629005, at *5 (N.D. Ind. Feb. 12, 2015) (noting that the ALJ's duty to develop a full and fair record is "enhanced" when the claimant appears at the hearing without counsel); (2) whether a claimant raised the issue of a composite job at the hearing, *Barnett*, 2014 WL 7450077, at *6; and (3) whether a claimant characterized her past relevant work as a composite job in her testimony before the ALJ, *Polchow v. Astrue*, 2011 WL 1900065, at *20 (N.D. Ill. May 19, 2011).

The Court's limited role in reviewing the ALJ's decision does not permit it to reweigh the evidence or make a determination regarding whether Sonja B.'s job was a composite job. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014); *see also Wiggins v. Colvin*, 2014 WL 2398478, at *7 (N.D. Ill. May 18, 2015) (citations omitted) ("At the end of the day, it is not the court's job to decide how to draw the line between a composite and a non-composite job."). Instead, the Court will examine the factors the other courts in this circuit have used. First, Sonja B. was represented by counsel during her hearing before the ALJ. Second, during the hearing, neither she nor her counsel specifically raised the issue of whether her job constituted a composite job. However, throughout her testimony, Sonja B. made several statements that characterized her past

11

relevant work as a composite job. Sonja B. said that her job as an MDS coordinator consisted of "taking care of care plans and assessing the patients and putting all of it into a reported called a Minimum Data Set. [INAUDIBLE] as well as I still worked on the floor as a floor nurse [INAUDIBLE] the patients [INAUDIBLE]." (Docket No. 13-2 at ECF pp. 39-40). She worked full time (*id.* at ECF p. 40). Asked by the ALJ what the heaviest thing was that she lifted in that job, Sonja B. replied, "150- to 200-pound patients because I still assisted in toileting them and transferring them, getting them to therapy as well as assessing them." (*Id.*). Weighing the factors other courts in this circuit have used in cases involving composite jobs, the ALJ erred in failing to consider whether Sonja B.'s past relevant work as an MDS Coordinator was a composite job.

Other authority supports this conclusion. After *Combs v. Berryhill* this Court again addressed the issue in *Keal v. Berryhill*, No. 1:16-cv-0811-DML-SEB, 2017 WL 3224680 (S.D. Ind. July 31, 2017). Keal claimed that his past relevant work as a construction superintendent was a composite job. *Id.* at *2. The Court cited *Combs* for the law on the issue, *id.* at *6, then wrote that it was not clear that Keal's work as a superintendent was a composite job. *Id.* At the hearing the vocational expert testified that she understood that when Keal was working as a superintendent, he was not actually doing construction work. *Id.* Keal's counsel made no effort to correct that understanding. *Id.* Keal did not give any testimony describing the superintendent position as a composite job. *Id.* The Court found that Keal did not clearly raise the composite-job issue before the ALJ and held that the ALJ did not err in declining to consider Keal's superintendent position as a composite job. *Id.* at *7.

In *Vickie H. v. Berryhill*, No. 1:18-cv-000351-SEB-DLP, 2019 WL 1370700 (S.D. Ind. Mar. 1, 2019), *adopted by and remanded by* 2019 WL 1367537, the claimant argued that the ALJ erred in concluding that the claimant could return to her past relevant work as an office helper

12

without considering whether the job was a composite job. The Court wrote that "[w]hen confronted with such a situation, the ALJ cannot simply take a composite job, divide it into its two component jobs, and find that the claimant can return to the less strenuous of the two." *Id.* at *4, quoting *Michalski v. Berryhill*, No. 16-C-1590, 2017 WL 4081905, at *5 (E.D. Wis. Sept. 14, 2017). Nor may the ALJ rely on vocational expert testimony that is based only on the DOT as a source of information. *Id.* That is because a composite job does not have a DOT counterpart. *Id.* citing *Cheatham v. Berryhill*, No. 15-cv-1382, 2017 WL 553012, at *6-7 (S.D. Ill. Feb. 10, 2017).

The Court in *Vickie H.* noted that "[f]ederal courts have come to the conclusion that remand is appropriate where testimony during the hearing should have alerted the ALJ that the claimant's past work is made up of more than one job." *Vickie H.*, 2019 WL 1370700, at *5. The Court reasoned that, "[a]t the very least, both Vickie's and the vocational expert's testimony was enough to alert the ALJ that his opinion needed to evaluate whether Vickie's position was composite, rather than ignore the issue entirely." *Id.*

The Commissioner argues that the facts of *Vickie H.* are materially different from Sonja B.'s case. It's true in *Vickie H.* "the vocational expert explicitly testified that Vickie's last position was a combination job, which supports a finding that the position was composite. The vocational expert stated as follows: 'Yes, her most recent work is a combination. She worked as an office helper and as a teacher's aide.'" *Id.* at *4. Further, this Court stated "the combination" of the claimant's and vocational expert's testimony sufficed to raise the issue of a composite job. However, the case that *Vickie H.* discusses *Cabaniss v. Colvin*, No. 13-cv-04244, 2014 WL 7450435, at *12 (N.D. Ill. Dec. 30, 2014), "there was no discussion in the hearing or in the ALJ's decision about whether Cabaniss's job was a composite job, yet the description Cabaniss testified

13

to does indicate that there were two separate components to his job . . .: the janitorial work, and the production/inspection job." *Id.* In *Vickie H.*, this Court compared Vickie's case to Cabaniss's and found that, based on her testimony, the two cases were similar in that the ALJ failed to discuss whether the claimants' jobs were composite jobs. *Vickie H.*, 2019 WL 1370700, at *4 ("Here, Vickie testified that her past relevant work encompassed both the duties of a classroom aide and of an office helper . . . As in *Cabaniss*, the ALJ here failed to discuss in his opinion whether Vickie's job was composite."). Thus, it is not evident that *Vickie H.* would not have been affirmed on this issue if not for the vocational expert's testimony, in combination with Vickie's testimony.

More recently, in *Jerry Z. v. Saul*, No. 1:19-cv-03022-MJD-JPH, 2020 WL 4034930 (S.D. Ind. July 16, 2020), the ALJ denied the claim at step four after finding that the claimant was able to perform his past work as a greaser, based on the claimant's RFC and the testimony of the vocational expert. *Id.* at *2, 4. The claimant contended that the job was a composite of the jobs of Greaser/Oiler and Tank-Truck Driver. *Id.* at *4. This Court held that because there was evidence indicating that the job may have been a composite job, the ALJ erred in failing to address the issue in his decision. *Id.*

The Commissioner again argues that *Jerry Z.* is materially different because the claimant objected to the vocational expert's testimony, "claiming that his past relevant work was a composite" job. *Id.* at *4. The decision does show that that the claimant objected "[f]ollowing the [ALJ's] hearing." *Id.* Nevertheless, the objection was not the basis for this Court's decision. The VE in *Jerry Z.* classified the claimant's past work as that of greaser/oiler, but the claimant testified at the hearing that his job required him to drive about half of the day. *Id.* at *12. The VE testified that an individual who is limited to occasional use of foot pedals bilaterally could

14

perform the greaser/oiler job but could not perform the driving part of the claimant's past job. *Id.* The Court remanded for a resolution of this issue. *Id.* at *12-13.

In sum, Sonja B.'s testimony at the hearing making it clear that she worked as an MDS Coordinator, as well as "still" working on the floor as a floor nurse, where she would have to assist in lifting 150- to 200-pound patients, was sufficient to alert the ALJ to the need to consider a composite job. The ALJ side-stepped the obligation to "make factual findings that support his conclusion" regarding the nature of Sonja B.'s past relevant work. *See Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008). Without those findings, the Court is unable to determine whether the DOT entry identified accurately describes Sonja B.'s past relevant work. On remand, the ALJ should develop the record regarding Sonja B.'s job and determine whether it was a composite job. If so, "the ALJ should not evaluate it . . . as generally performed in the national economy." *Garcia v. Colvin*, 2013 WL 3321509 (N.D. Ill. June 28, 2013).

2. **Remaining Issue**

Sonja B. raises one additional issue. She argues that the ALJ erred in determining the RFC using his own lay opinions about her abilities and limitations after finding "not persuasive" all of the medical opinions in the record about her physical abilities and limitations. Sonja B. argues that there was an "evidentiary deficit," in which the ALJ should have summoned a medical expert who could review all of the medical evidence and offer limitations that were grounded in evidence. The Commissioner argues that the Seventh Circuit has not held that an ALJ must base his RFC finding on the opinion of a physician and that, here, Sonja B. points to no evidence that the ALJ missed or instances where the ALJ interpreted raw medical data independently of other medical evidence or in a manner that led to erroneous conclusions regarding her functional abilities. The Court need not resolve these issues because it finds that

15

the issue discussed above is dispositive. However, the Court will provide some direction upon remand.

It is an ALJ's exclusive authority to assess the RFC. 20 C.F.R. § 404.1546(c). However, ALJs must build a "logical bridge" from the evidence to their conclusions. *Plessinger v. Berryhill*, 900 F.3d 909, 917 (7th Cir. 2018). Sonja B. primarily relies on an unpublished, nonprecedential decision of the Seventh Circuit in *Suide v. Astrue*, 371 Fed. App'x 684 (7th Cir. 2010). However, as this Court previously noted, *Suide* rests on established Seventh Circuit precedent. *Cornes v. Berryhill*, No. 2:17-cv-195-WTL-DLP, 2018 WL 1790057, at *6 (S.D. Ind. Apr. 16, 2018). "When an ALJ denies benefits, she must build an 'accurate and logical bridge from the evidence to her conclusion,' *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), and she is not allowed to 'play doctor' by using her own lay opinions to fill evidentiary gaps in the record, see *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003)." *Suide*, 371 Fed. App'x at 690.

This Court's reading of *Suide*, or any other Circuit precedent on this issue, does not establish a bright line rule that an ALJ always plays doctor when imposing a more restrictive, but not fully disabling, RFC than the opinions in the record recommend. It does not automatically follow that to do so the ALJ would be required to interpret medical data outside the purview of a layperson. In *Suide*, the Seventh Circuit did say "it is not the ALJ's evaluation of Dr. Orris's reports that requires a remand in this case. Even assuming that Dr. Orris's opinions did not deserve greater weight, it is the evidentiary deficit left by the ALJ's rejection of his reports—not the decision itself—that is troubling." 371 Fed. App'x at 690. But, the Court went on to explain, "[t]he rest of the record simply does not support the parameters included in the ALJ's [RFC], such as an ability to 'stand or walk for six hours' in a typical work day." *Id.* The Court further identified the other evidence that remained and noted why it was problematic that the ALJ solely

16

relied on this other evidence. First, the ALJ did not discuss the weight given to the other evidence. *Id.* "More important," this other evidence pre-dated the plaintiff's second stroke and more injuries that may have significantly altered the plaintiff's condition. *Id.* Third, this other evidence did not contain functional assessments. *Id.* On that record, the Court reasoned "[i]t is unclear, therefore, how the ALJ concluded that Suide could stand or walk for six hours a day." *Id.*

Likewise in *Cornes*, this Court agreed with the plaintiff that the ALJ's rejection of the state agency reviewing consultant opinions as to her physical RFC created an evidentiary gap, which the ALJ "did not explain how she filled the gap to arrive at her own RFC finding." 2018 WL 1790057, at *6. The Court went on to explain that the concern about the ALJ playing doctor was "borne out by her treatment of the evidence in this case. The Court is not able to logically follow some of her conclusions based on the evidence cited." *Id.* at *7.

Here, the ALJ noted that the state agency consultants opined no severe impairments. The ALJ found these opinions "not persuasive," because Sonja B.'s "office visit notes indicate uncontrolled diabetes with episodes of hyperglycemia and hypoglycemia that could reasonably limit the claimant's ability to perform exertional activities at the light or greater exertional level." (Docket No. 13-2 at ECF p. 23). Sonja B,'s treating nurse practitioner opined that Sonja B.'s "ability to work was limited by arthritis in her hands and she could not perform occasional reaching, handling and fingering, as well as occasional operation of foot controls bilaterally." (*Id.*). The ALJ found this opinion "not persuasive" because the "limitations are not supported by the treatment record that shows no significant loss of function of her hands at Exhibit 12F" and "no objective findings to support limiting the claimant's ability to operate foot controls." (*Id.*). Finally, again with respect to opinions regarding her physical abilities, the ALJ found

17

consultative examiner, Dr. Soufi, who opined that Sonja B. had no physical limitations to be "not persuasive as [Sonja B.'s] episodes of low and high glucose levels could reasonably limit the claimant's ability to lift heavy weight and stand/walk for prolonged periods due to fatigue, malaise, and weakness." (*Id.*). The ALJ then announced that the evidence supported an RFC finding that Sonja B. was limited to a reduced range of sedentary work, "which is supported by the treatment record that show uncontrolled diabetes mellitus with episodes of hyperglycemia and hypoglycemia, and the claimant's reports that she does not perform her normal activities during periods of extremely high or low glucose levels." (Docket No. 13-2 at ECF pp. 23-24).

Sonja B. argues, given the ALJ rejected each physical opinion, yet assigned an RFC with physical limitations, "it is unclear how the ALJ concluded that [Sonja B.] could perform sedentary work for 8 hours per day, 5 days per week, week after week without any limitation that accounts for what the ALJ himself recognized as her periods of extremely high or extremely low glucose levels." (Docket No. 18 at ECF p. 10). The ALJ's decision acknowledged that Sonja B.'s records show "uncontrolled diabetes mellitus with episodes of hyperglycemia and hypoglycemia. . . ." (Docket No. 13-2 at ECF pp. 23-24). The ALJ also accepted Sonja B.'s testimony that "she does not perform her normal activities during periods of extremely high or low glucose levels." (Docket No. 13-2 at ECF p. 24). Sonja B. testified that with low blood sugar levels, she has "nausea and shakes to walk and feel sick, and even after I am able to treat my low blood sugar, I'm still sick for about an hour or so before I start feeling normal again." (Docket No. 13-2 at ECF pp. 40-41).

The Court need not resolve the issue of whether a logical bridge was formed in light of rejecting every medical opinion regarding Sonja B.'s physical abilities. On remand, the ALJ should be sure to fulfill his obligation to build a logical bridge from the evidence to the

18

conclusions and to avoid relying on lay opinions to fill evidentiary gaps in the record where medical opinions are necessary. *See, e.g., Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003).

## VI. CONCLUSION

For all these reasons, the Magistrate Judge recommends that the Court **REMANDS** the ALJ's opinion pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 21st day of June, 2022.

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.